Our third case of the morning, Borough of Moosic v. Darwin Professional Underwriters. Our third case of the morning, Borough of Moosic v. Darwin Professional Underwriters. I don't know the answer to that question. I can submit a brief on that, if you'd like, Your Honor, to address that. I'd like to reserve three minutes for rebuttal. May it please the Court, my name is David Strasser, and I represent the appellates in this matter. The Bureau of Music, Moosic Borough Council, Moosic Planning Commission, Moosic Borough Zoning Board, and five individuals who were also sued in the Civil Rights Action. Each of the appellants is entitled to coverage under the terms of a public official's professional liability policy. Now, wasn't there an earlier policy that was in effect at the time the first mandamus petition was filed? There may have been. The Darwin policies commenced on August 2006, and that's the inception date of those policies. I do not know, and I don't believe there's anything in the record that says whether or not the Bureau of Music had a policy before that time. Well, one would assume they did. One would expect it, yes, Your Honor. You give the notice then, and as that case continues, don't you then continue coverage with the policy that existed when the mandamus complaint was filed? That would be the case if, in fact, you had a claim in 2005, which we dispute, and that later actions that occurred were involved. The mandamus complaint that you're talking about in 2005 was dismissed in 2006. That was filed, and that was filed in the state system. Correct, and the court found there that, in essence, it was a misplaced zoning appeal, and it does appear that there would have been any coverage. That was a complaint filed against the Bureau of Music at that time. Now, isn't it when actions are filed against a government entity, isn't it the responsibility of that government entity at that time to notify the insurance payer? I would agree with that when you have an action that's within the coverage of the policy. In this instance, we do not believe that there was coverage, and no one has disagreed with that position that we've taken in our brief, that there was no coverage for this mandamus action. So that there was no duty just when the papers were filed to let your insurance company know, hey, we're being sued? No, I do not believe there is a duty to do that unless you believe there's coverage in order to trigger that coverage. In other words, the purpose, your position would be the purpose of the notice, notification, is to let your carrier know you're going to make a claim, you want a defense, and ultimately you probably want the indemnification as well. That's absolutely correct, and it serves no purpose to provide notice of something that's not covered. If you're not making such a claim. That is correct, Your Honor. How does this situation not fit within the related claims, the fact that there is no coverage for the related claims here? It's a very broad related claims language, and the word claim is very broad. I didn't get from your brief a real dispute as to why you don't fit within that language. Well, first of all, the question of this being a related claim is a red herring because you don't get to that issue. You have to interpret the policy through all its provisions. You have an insuring agreement, and there's no dispute that the civil rights action that was filed in 2010 falls within the coverage provided by the 2010 policy. There is an exclusion that deals with prior claims that are filed. The court doesn't rely on that exclusion. The court reads it out of the policy, and that's the determination. That's the test that should be applied. There is a provision that says if another claim was made arising out of the same facts and circumstances, you take that date as the date of the claim, and in this situation, that would be the mandamus complaint, and that precedes the inception of this policy, and therefore there's no coverage. And that's what the denial letter said. How does that not correctly state how the policy should be? Because the purpose of the policy, again, if you consider all the provisions, the related – I don't want to go to the purpose. I want to go to this provision. So related – Can you say why that doesn't bar coverage? Because the insuring agreement does not include related claims. It's limited specifically to claims. The definition of claims does not include a definition, but does not include within it related claims. The provision you're talking about is in the policy for the sole purpose of determining what limit of liability applies and whether or not the policyholder has to pay to deduct it. I assume it's a claims-made policy, and if there was a previous claim that's part of the same similar facts and circumstances, they're saying you should have – like Judge Roth said, you should have made the claim back then for coverage, and we're not going to cover it. That's a prior claim exclusion. The related claim issue is determining what limits do you get. If I'm a professional engineer and I design this building and I don't properly calculate the structure and this roof falls down and injures me and someone else, I sue you in 2009. Someone else sues you in 2010. What the related claim provision says is that I only get one $1 million limit for those two claims because they're related, so that's my limit of liability for that. And on the other side, I don't have to – I only have to pay one deductible. Where does that appear in the related claims definition? Well, it appears in the sections – it appears in conditions that, A, regardless of the number of claims brought under this policy, the number of persons or entities included within the definition of insurer, the number of claimants, the insurer's liability is limited as follows. Related claims will be deemed a single claim, and only one each claim, limit of liability, and only one retention will apply. That's the only place in the policy that terms related claims are used in the terms because that's how the policy, when you apply correct interpretive principles, that's the purpose of the related claims language. It's not to be used as an exclusion. You have an exclusion that applies to prior claims. And if you allow this to circumvent that, you've read that exclusion completely out of the policy. You've read the saving provision in that exclusion that says you go back to the initial inception date of the string of policies as your first date to determine prior claims. Is this a claim made policy? Yes, this is a claim made policy. As the denial letter said, Section 2, Definition P of the policy defines related claims as all claims for wrongful acts based upon arising out of, resulting from, or any way involving the same or related facts, circumstances, transactions, situations, etc. Policy Section 4, Condition F4 states that all related claims will be treated as a single claim made, single claim made, when the earliest of such related claims was first made or when the earliest of such related claims is treated as having been made in accordance with Condition F2, whichever is earlier. How is that, and therefore made previous to inception, how is that? All that's telling you is which policy do you look to to determine what your limits of liability are. Do you look at today or do you look at the policy from three years ago? And the policy can differ. The deductible can change. We've been discussing the merits here. You raised a procedural question as well. Yes, Your Honor. Can you explain to me your position as to how the district court heard, in your view, in deciding this as a motion to dismiss based on the very limited record that was available and what the district court should have done? Well, asking the question answers it. In our view, this was decided as a motion to dismiss. The court relied on documents that were clearly outside the record. Weren't they documents, though, that involved you as a party? I mean, do you dispute the bona fides of the documents that were attached? No, we didn't have an opportunity to address those documents. The plaintiff's mandamus complaint, the denial letter, things like that. You said you were sandbagged and you wanted to distinguish the documents, but weren't these documents that you were party to or you received? Well, we were party. Well, part of the insurers were party to the mandamus, only two of the nine. You had four individuals that weren't even party to the mandamus that are having their rights stripped away by this view. But, no, we didn't have an opportunity. The original motion to dismiss didn't discuss mandamus at all. It's submitted for the first time and argued for the first time in the reply. In the reply to the motion. In the reply. In the reply in the motion to dismiss. Yes, to our argument. And the court didn't adopt any of the arguments that were raised in the motion. So what's at stake here is that the district court would not have had a sufficient basis, perhaps evidentiary basis, to make a determination as to relatedness. Is that at the heart of your point? Yes. Yes. I mean, there was ongoing discovery at the time. Even with the attachment of the mandamus complaint to the reply, there would not have been sufficient information available to the district court. Yes, because we were denied the opportunity to do discovery as to decisions that were made. We were denied the opportunity to do broker discovery to determine what the basis of these policies being written. We were denied the opportunity to do reasonable expectation discovery, to put in evidence. Because this motion should have been converted into a motion for summary judgment. If you look at the cases that they rely on when they use a prior notice exclusion, those cases all rely on prior notice exclusions. None of them use this insured. I've got eight slides. None of them rely on a we're going to read related claim into the insuring agreement. They all rely on exclusions. Can I finish my thought? Okay. They all rely on those exclusions. They don't rely on that issue at all.  Thank you. All right, we'll hear from you. May it please the court, Tony Mishiosha and Gail White from White and Williams for the defendant and appellee, Darwin National Insurance Company. I'd like to try to do two things. Yeah. They were Mr. Bortnick, who was lead counsel, has left the firm. And as far as I know, he's probably with another firm. So he transferred to us about two weeks ago. All right. What I'd like to do is, in addition to respond to your questions, primarily address two issues. The first being whether the district court erred in its construction of a policy. And I want to respond to what I believe are some either misunderstandings or mischaracterizations of the nature of some of the policy language. And then second, I'd like to respond to Judge Smith's question about the procedure and what evidence was considered by the district court. First of all, I think all the parties agree, and the district court properly held, that the starting place is going to be the policy language. And if I can just have a moment to walk the court through a couple of provisions of the policy that are significant, because my colleague had stated, although I think Judge Rendell, you corrected him, that there was only one place in the policy where the related claims language is used. And he said that that was in the limits provision. And that's not accurate. But I'll get to that in a second. The starting point for coverage is going to be under the insuring agreement in the policy, and that's found at A34 in the record. And here it says, in short, that the insurance company will pay on behalf of the insured, loss that the insured is legally obligated to pay. What provision you're on in the policy? It's the insuring agreement, section Roman numeral 1A, page A34 of the record. Yes. And I'm focusing now on the third line, where it talks about that there's coverage for any claim first made against the insured during the policy period. There's been much talk in the brief about the insurance company or the district court reading language out of the policy. And I respectfully submit that it's actually the insured that's reading the word first out of this policy. This is a claims-made policy. The claim has to be made and actually first made during the policy. As I believe Judge Rendell noticed, under this policy, unlike some of the policies in the case law that's been cited to the court, there is a definition of claim. It's a very broad definition of claim, and that's on page A35 of the record. And the definition of claim in this policy includes, among other things, any written demand for monetary damages or non-monetary relief, and it also includes under Part III of the definition, any civil proceeding in a court of law or equity. The policy then goes on to the court. So when we are talking about this civil rights action being filed against the Borough of Mooson, the prior claim does not have to have anything to do with a civil rights action? Is that your position? The prior claim has to be a related claim. And I think determining whether or not it is related, you look at the totality of the circumstances. You're going to look at factors like were the parties the same, were the facts the same, was the relief the same. That could be one of the factors. I don't think that's a dispositive factor that the earlier claim had to have been a civil rights claim. Well, you look at the definition of related claims, right? You start with the definition of related claims, which I was going to get to next, which is on page A39 of the record. It's defined extremely broadly in the policy as all claims for wrongful acts based upon, arising out of, resulting from, or in any way involving the same or related facts, circumstances, et cetera, et cetera, or the same or related series of facts or circumstances, whether related logically, causally, or in any other way. The language of the related claim definition in this policy is broader than the language that's been discussed in the case law that we've cited from the Third Circuit and from Pennsylvania Supreme Court that is construed arising out of or relating to broadly. That case law certainly applies, but this provision is even broader than that because it uses additional language discussing it. But here's the important point where I think my colleague misunderstands the policy. The related claims language is then discussed in two different places in the condition section. One is on page A44 of the record, condition A, limits of liability, and he's talked about how in that section there's discussion about how the related claims will be deemed a single claim and there will be one limit and one retention. That's fine. But he ignores the fact, although Judge Rendell, I think you called this to his attention, that the related claim language is also discussed in condition F, which deals with notice, timing, and interrelationship of claims. And the significance here, and I think this is something that Judge Roth touched upon on her first question, is that it doesn't exclude coverage. What it does is it determines which policy responds when you have related claims. It says in condition F4, all related claims will be treated as a single claim made when the earliest of such related claims was first made. So when you go back to the insuring agreement and you have to determine when a claim was first made, this provision tells you that if you have related claims, they will be deemed to be made when the first claim was made. It doesn't necessarily exclude coverage. Presumably there could have been a few policies of this company that were different, but you go back to that time. Correct. And that, I think, was what Judge Roth was asking about, is that if you went back to the policy in effect in 2005 or 2006 and had the policy language been implicated, had notice been given, and everything else, and insured under this condition, it gives notice, then locks in coverage for related claims that even happen subsequent to that first policy period. So to characterize this related claims provision as an exclusion is inaccurate. It's not. It just places when the claim is made. In some instances like this, the net effect under this particular 2010 policy is to exclude coverage, but it just places it back to the earlier one, and you go back to that policy to look at coverage. Now I'd like to use a moment to talk about Judge Schnitt's comments about what did the district court consider and was it an error to consider what it looked at. I mean, this really should have been summary judgment, should it not? Certainly we wouldn't have this issue. Simple matter to accomplish that. We wouldn't have this issue if it was summary judgment, but I don't know that summary judgment is how this would be disposed. If we even went back below, I think this would be a motion for judgment on the pleadings, Your Honor. The issue is in the insured's declaratory judgment complaint, if you take a look at that complaint, which is in the record as well, starting on page A-19, the insured in the complaint against Darwin discusses the underlying action and underlying complaint in paragraph 9, placing that documented issue. The insured's discusses. It doesn't. It does not attach the mandates. Right? Their complaint doesn't attach it. They attach the declination letter, which clearly discusses and references the mandamus complaint, identifies the mandamus complaint as a basis for denying coverage, explains that the denial of coverage is based upon the fact that the claim is a related claim and is, therefore, not deemed to have been first made during this policy period. Did they contest that in response to the motion to dismiss? Actually, what they did in response to the motion to dismiss, I believe, is put the mandamus complaint at issue by making misstatements to the court. If you look at their response in the district court to the motion to dismiss, which starts around A-89, they talk about in their counterfactual background, first of all, on page A-96, that the background set forth by Darwin in its brief, where Darwin quoted at length the factual recitation of the court and the underlying motion to dismiss, they said it's all set forth in that opinion. It's all in the underlying action. They don't respond to any of it. They don't say any of it's inaccurate. They don't say they need any discovery. They then go on to discuss a number of the letters that were described in the denial letter of Darwin. They don't specifically talk about the mandamus complaint, but what they do say, and this is wrong, is that the remaining pre-inception date allegations are complaints about a third party, a request to investigate, a request to enter a written denial, and a belief by the author that the borough was not enforcing its zoning ordinance. They are not a lawsuit. This is what they represented to the district court. This is page A-98 of the record. They are not a lawsuit. They are not a claim for damages. They are not a request or suggestion of a claim for damages. And based on that misstatement to the district court in their opposition to the motion to dismiss, they argue that the mandamus complaint and everything else was not a claim. I think it was more than fair at that point in time for the mandamus complaint to be put in front of the court. All the court had at that time was the summary of it in the denial letter. And that's what you did. It's a public record. That's what was done. It was attached to the response in support of the motion to dismiss, the reply, I'm sorry. And the court had it at that point in time. But, again, it was in response to factual misstatements that they made saying there was no complaint, saying there was no demand for money. It's a public record. At any point in time in the case, a court can take judicial notice of public records, even at the 12B6 stage. It's rare. It's unusual. But it doesn't mean that it's unjust or a denial of due process here. This is not a complaint that's from some third-party action to which they were not a party. It's not a document that surprised them or sandbagged them. It was prominently discussed in the denial letter. It was, in fact, mentioned, although in passing, in the original motion to dismiss papers filed in this case by Darwin. I believe it's on the end of the brief in the bad faith section. But they do mention the fact that part of the reason they didn't engage in bad faith is they reviewed a bunch of documents, including the letters, including the mandamus complaint. So there was some reference to it. It certainly wasn't a focal point of the initial brief. But it was a matter of public record. As to, I believe it was Judge Rendell's comment, shouldn't this have been a motion for summary judgment? Again, the answer is no. There's no disputed fact here. There's no real factual determination or finding the court needs to make. The mandamus complaint is a document of writing, a public record. It speaks for itself. The question before the district court and now this court is, what is the legal significance of that document when compared against the policy language and considering the related claims definition and provisions in the Darwin policy? So the attachments to the complaint were the insurance policy and the denial letter. Correct. But in the coverage complaint, they also reference in the body of that the underlying complaint, which obviously has to be considered for purposes of assessing duty to defend. Right. They mentioned their own motion to dismiss that was filed in the underlying case. They mentioned the district court's order and memorandum granting in part that motion to dismiss, which was then cited by the district court in this case. So they certainly placed all of those documents at issue. And those documents in turn referenced the mandamus complaint. But I think the biggest issue is there's no surprise to them. It's a public record for which the court can take and properly took judicial notice. And there's no discovery that they would need. They talk about discovery. But the discovery that they talk about is as to their reasonable expectations. That has nothing to do with this issue. Second, you don't even get to reasonable expectations because the Pennsylvania Supreme Court, in construing the arising out of language, which is less broad than our policy, said that it's unambiguous and they defined what it means. So you don't get to reasonable expectations in this case because there's no ambiguity. Secondly, reasonable expectations typically applies in a situation where you have a consumer and you have something like a fire policy, a life insurance policy, some sort of noncommercial insured. That's not the case here. We have a government entity that's the insured and the policy is not ambiguous. Finally, let me just take a moment to address the separation of insureds provision. They make much in their brief that there's a separation of insured provision. And because of that, the fact that the mandamus complaint only names some but not all of the defendants to the current complaint creates coverage for some but maybe not all of the insurers. That's as to exclusions. It only applies to exclusions. Yes, Your Honor. I'm not sure whether people are actually insured or losses insured under a policy. I'm not sure whether people are insured. Correct. The policy insures loss. It pertains to wrongful acts. But the separation of insured provision first only applies to exclusions. Here, what we've argued and what the district court found is that there's no coverage looking at the insuring agreement and the condition pertaining to when related claims are deemed to have made. Secondly, the separation of insured provisions refers to acts, errors, or omissions of any insured. It doesn't speak to a situation like this where a third party makes a claim against an insured. It doesn't say anything about that. And even when you look at the definition of related claims, that doesn't speak to a claim made against any particular insured or anything like that. So I think that provision. In fact, related claims doesn't even say the same people. I'm sorry? It doesn't even say involving the same parties or the same people. It makes no reference to that. That's my point. Related claims provisions do. Correct. But this one is very broad in this case. So based on all that, Your Honors, I would ask that you affirm the district court ruling. The district court reached the correct coverage decision in this case. It properly considered the mandamus complaint in reaching its decision. Even if the court were to find that the court should not have considered the mandamus complaint because this was a Rule 12b-6 motion, it was simply harmless error at worst because this would have been then before the court. Again, on a motion for judgment on the pleadings, you still wouldn't get the discovery. They haven't identified any discovery that they need relevant to this issue. And at the end of the day, neither justice nor due process will be served by remanding this case back to district court and forcing the parties in the court just to redo these issues again, dotting their I's a little bit more closely. Thank you, Your Honor. Okay, where do I start? Let's talk about innocent insureds. Innocent insured provision is there to protect people who are having acts imputed against them to deny them coverage. You have individuals here who are not being asserted. There's no claim that there was somehow a claim being made against them that somehow should be used to exclude coverage. But there is no exclusion here. Your Honor, I just have to disagree with you. Under F-4, it's a timing. It's a timing. Timing for the purposes of determining the limit of liability that's available. It's not timing to determine when the claim was made. That's what it says. It exactly says when it will be deemed made. Right, for purposes of the limit of liability. And even to get to a related claim, you have the threshold burden of determining that these claims were in fact related. They're not related. You have different parties involved. You have different acts. You have a different time. You have different relief being sought. I mean, the Civil Rights Action is talking about denying free speech in 2007 and 2008. But you're reading out, you're assuming that related claims is defined differently from the way it is. It's defined very broadly, is it not? Well, as an exclusion, it needs to be interpreted strictly against them. And there are other cases that have looked at the same issue. And you look at the cases that we've cited and have determined that. But they're different provisions. Every related claims provision is not the same. Well, if you accept their position, Your Honor, what you're telling nonprofits, you're telling bureaus, you're telling anybody who has a board of directors with these types of provision that any time they get a letter, a postcard, an email from someone complaining about a pothole, complaining about the police harassed me, that you have to put that, even though it's not a claim, it's not a lawsuit, there's no coverage, they have to send all those to those insurers. Because five years from now, when a civil rights action is brought on completely and they talk about how the borough didn't fix their pothole in 2005, that was a claim. You should have noticed us in 2005. You've made the coverage completely illusory by doing that. On the issue of the, as I stumble here, I'll miss it. What we addressed in the opposition was that letters were not a lawsuit. That's what we addressed. We didn't invite mandamus. We had no opportunity to explain to the court why, and I know my time's up, if I can just finish this thought. We had no opportunity to explain to the trial court why the mandamus action was not related. We explained why the letters weren't, and the district court rejected that. They didn't reject it because there's nothing in the opinion, but he didn't rely on that. He relied on the mandamus action, which was first submitted and argued in the reply. We didn't get an opportunity. And if summary judgment, we would have gotten an opportunity. We would have been able to do discovery on the policy. We would have been able to convince the court that he can't do what he did, which is read out sections of policies that are directed for these specific issues. I apologize for going over. All right, fine. Thank you. Thank you very much. We'll take the case under advisement.